*1009
 
 Opinion
 

 SPENCER, P. J.
 

 Introduction
 

 Appellant Rudy L. appeals from an order declaring him to be a ward of the court pursuant to Welfare and Institutions Code section 602 based on his commission of vandalism in violation of Penal Code section 594.
 

 Statement of Facts
 

 On the afternoon of April 29, 1993, appellant spray-painted the letter “A” on the wall of an empty building located at 5327 East Beverly Boulevard. Neither appellant nor his mother owned the building.
 

 Contention
 

 Appellant contends the petition erroneously was sustained, in that the elements of the crime he was found to have committed were not proven—lack of permission is an element of vandalism, and the People failed to prove he had no permission to paint on the building wall. For the reasons set forth below, we disagree.
 

 Discussion
 

 At the time appellant spray-painted the building wall and the adjudication hearing was held, Penal Code section 594, subdivision (a) (hereinafter section 594(a)), provided: “Every person who maliciously (1) defaces with paint or any other liquid, (2) damages or (3) destroys any real or personal property not his or her own, ... is guilty of vandalism.” Appellant’s counsel argued appellant should not be found to have committed vandalism and the petition should not be sustained, in that lack of permission is an element of vandalism and the People failed to prove appellant lacked permission to spray-paint the building wall. The court concluded, based on the language of the statute, lack of permission was not an element of the offense but, rather, permission was a defense. It thereafter found appellant had committed the offense and sustained the petition.
 

 While appellant’s appeal was pending, section 594(a) was amended. (Stats. 1993, ch. 605, § 4.) It now provides: “Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own, ... is guilty of vandalism: HO (1) Sprays,
 
 *1010
 
 scratches, writes on, or otherwise defaces, [ft] (2) Damages, [ft] (3) Destroys, [ft] Whenever a person violates paragraph (1) with respect to real property belonging to any public entity, ... it shall be a permissive inference that the person neither owned the property nor had the permission of the owner to deface, damage, or destroy the property.”
 

 Appellant argues the provision as to the permissive inference makes it clear the Legislature considered lack of permission to be an element of vandalism. Since the prosecution failed to prove this element, appellant is entitled to reversal of the adjudication; double jeopardy protection bars retrial of the case.
 

 In the People’s view, the Legislature’s failure to specify that lack of permission is an element of the offense means it is not and never has been an element, the permissive inference language notwithstanding. Therefore, the prosecution did not fail to prove its case. However, if the court concludes lack of permission is an element of the offense, then the element was added as a result of the 1993 amendment to section 594(a). If so, and the amendment is applied retroactively to appellant’s case, double jeopardy protection does not apply and the People should be allowed to retry the case.
 

 Where a statute is ambiguous, it requires construction by the court. Here, the amended statute is ambiguous. The permissive inference language allows an inference an actor had no permission to deface government property, but the language of the statute does not specify that lack of permission is an element of the offense, making it unclear whether or not it is an element. Thus, construction of the statute is necessary.
 

 A statute is to be construed so as to give effect to the intention of the Legislature. (Code Civ. Proc., § 1859;
 
 Landrum
 
 v.
 
 Superior Court
 
 (1981) 30 Cal.3d 1, 12 [177 Cal.Rptr. 325, 634 P.2d 352].) To do so, “ ‘[t]he court turns first to the words [of the statute] themselves for the answer.’ [Citation.]”
 
 (Moyer
 
 v.
 
 Workmen’s Comp. Appeals Bd.
 
 (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The statutory language used is to be given its usual, ordinary meaning and, where possible, significance should be given to every word and phrase.
 
 (Id.
 
 at p. 230.) As stated in Code of Civil Procedure section 1858, “. . . where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.” Accordingly, a construction which renders some words surplusage should be avoided.
 
 (California Mfrs. Assn.
 
 v.
 
 Public Utilities Com.
 
 (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) Moreover, “[w]ords must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible. [Citations.]”
 
 (Ibid.)
 

 
 *1011
 
 Additionally, in construing a statute, the duty of the court “is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted.” (Code Civ. Proc., § 1858.) “It is . . . against all settled rules of statutory construction that courts should write into a statute by implication express requirements which the Legislature itself has not seen fit to place in the statute.”
 
 (People
 
 v.
 
 White
 
 (1954) 122 Cal.App.2d 551, 554 [265 P.2d 115]; see
 
 Estate of Tkachuk
 
 (1977) 73 Cal.App.3d 14, 18 [139 Cal.Rptr. 55].) The court must follow the language used in a statute and give it its plain meaning, “1 “even if it appears probable that a different object was in the mind of the legislature.” ’ ”
 
 (People
 
 v.
 
 Weidert
 
 (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380].)
 

 It
 
 is clear that in neither version of section 594(a) did the Legislature specify that lack of permission was an element of the offense of vandalism. Moreover, had the Legislature intended to make lack of permission an element it easily could have done so. In other criminal statutes, it has specifically stated that lack of permission or consent is an element of the offense. (See, e.g., Pen. Code, § 211 [“Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and
 
 against his will,
 
 accomplished by means of force or fear.” (Italics added.)];
 
 id.,
 
 § 261, subd. (a)(2) [“Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . [w]here it is accomplished
 
 against a person’s will
 
 by means of force, violence, duress, menace, or fear . . . .” (Italics added.)];
 
 id.,
 
 § 596 [“Every person who,
 
 without the consent of the owner,
 
 wilfully administers poison to any animal, the property of another, ... is guilty of a misdemeanor.” (Italics added.)].)
 

 As stated above, a statute is to be interpreted according to the words used, and the court is not to insert provisions omitted by the Legislature. (Code Civ. Proc., § 1858;
 
 People
 
 v.
 
 White, supra,
 
 122 Cal.App.2d at p. 554.) Additionally, a statute should be interpreted in the context of the whole system of law of which it is a part.
 
 (People
 
 v.
 
 Comingore
 
 (1977) 20 Cal.3d 142, 147 [141 Cal.Rptr. 542, 570 P.2d 723].) Thus, if a statute “referring to one subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent.”
 
 (Craven
 
 v.
 
 Crout
 
 (1985) 163 Cal.App.3d 779, 783 [209 Cal.Rptr. 649]; accord,
 
 Estate of Reeves
 
 (1991) 233 Cal.App.3d 651, 657 [284 Cal.Rptr. 650].) The omission of language in either version of section 594(a) making lack of permission an element of the offense, when such language has been inserted in other criminal statutes to make lack of permission or consent an element of the offenses, is indicative of a legislative intent not to make lack of permission an element of vandalism.
 

 
 *1012
 
 The permissive inference language suggests that the Legislature had in mind the notion that lack of permission was an element of the offense. But, as stated above, the court must follow the language used in a statute and give it its plain meaning, “ ‘ “even if it appears probable that a different object was in the mind of the legislature.” ’ ”
 
 (People
 
 v.
 
 Weidert, supra,
 
 39 Cal.3d at p. 843.)
 

 On the other hand, a construction of section 594(a) which does not include lack of permission as an element of the offense renders the phrase “nor had the permission of the owner” surplusage. If lack of permission is not an element of the offense, an inference that the actor lacked permission is unnecessary. Whether or not such an inference existed, the actor still could prove permission—and thus lack of malice—as a defense. Such a construction would violate the principles that a statute should be construed so as to give effect to all provisions, and words used therein should not be rendered mere surplusage. (Code Civ. Proc., § 1858;
 
 California Mfrs. Assn.
 
 v.
 
 Public Utilities Com., supra,
 
 24 Cal.3d at p. 844.)
 

 In addition to the rules of statutory construction, a valuable aid in ascertaining legislative intent may be the legislative history of a statute.
 
 (California Mfrs. Assn.
 
 v.
 
 Public Utilities Com., supra,
 
 24 Cal.3d at p. 844.) The amendment to section 594(a) was proposed as part of Assembly Bill No. 1179, 1993-1994 Regular Session (Assembly Bill No. 1179). According to a report prepared for hearing by the Assembly Committee on Public Safety on May 4, 1993, the purpose of the bill was “to elevate the sentences for vandalism for persons who have a prior conviction where a term of imprisonment was served. If an individual knows he or she can get away with vandalism, they are going to continue to do it. Graffiti and vandalism generate public outrage,” and “[t]he cost of graffiti removal is tremendous.” More than that, the blight caused by graffiti “affects all communities” and causes “[t]urf wars” and gang violence, which can lead to murder. “When it comes to vandalism with a prior conviction, we need to look beyond the dollar value the tag caused and wake-up and recognize its link to gang violence, drug trafficking and all the associated social ills that affect neglected communities.” The report defines vandalism in the language of section 594(a), and it mentions nothing about the question of permission.
 

 The proposed amendment of section 594(a) was part of the amendment of Assembly Bill No. 1179 on May 17. The report prepared for the Assembly Committee on Ways and Means hearing on June 2, following amendment of the bill on May 17, refers to Assembly Bill No. 1179 as the “1993 California Graffiti Omnibus Bill” and notes the purpose of the bill is to “enhance the punishment for graffiti.” It mentions nothing about the proposed amendment to section 594(a) or the issue of permission.
 

 
 *1013
 
 The Senate Committee on Judiciary report for its July 13 hearing notes: “This bill would expand the definition of vandalism by replacing ‘defaces with paint or any other liquid’ with ‘sprays, scratches, writes on, or otherwise defaces.’ [f] This bill would also provide a permissive inference that the person neither owned the property nor had the permission of the owner to deface, damage, or destroy any real property owned by a governmental entity.” However, the report does not further discuss the inference or the issue of permission. The same is true of the Senate Rules Committee report for its August 25 hearing, which followed the Senate’s August 17 amendments to Assembly Bill No. 1179.
 

 The Senate amended the bill again on September 7, then the bill was returned to the Assembly, which concurred in the amendments. The digest prepared for the Assembly vote again mentions the permissive inference but does not explain or discuss it. Neither does the Legislative Counsel’s Digest prepared on Assembly Bill No. 1179.
 

 As the foregoing shows, there is nothing in the legislative history of the amendment to section 594(a) to demonstrate a clear legislative understanding that lack of permission was an element of vandalism or an intent to change the law to make lack of permission an element of vandalism; the issue simply appears not to have been raised or discussed. This omission supports an inference, though not necessarily a strong one, the Legislature did not consider lack of permission to be an element of the offense or intend to change the law to make it an element.
 
 (Committee of Seven Thousand
 
 v.
 
 Superior Court
 
 (1988) 45 Cal.3d 491, 508 [247 Cal.Rptr. 362, 754 P.2d 70].)
 

 To summarize, there is nothing in the language of section 594(a), either before or after amendment, which specifically makes lack of permission an element of vandalism. There is nothing in the legislative history of the amendment which clearly demonstrates a legislative understanding that lack of permission was an element of the offense, although such an understanding could be inferred from the reference to permission in the permissive inference provision. Neither does the legislative history show an intent to change the law and make it an element. However, construing the statute in a manner which does not make lack of permission an element would render the phrase “nor had the permission of the owner” surplusage.
 

 On balance, we hold the better construction of section 594(a) is that it does not now and did not before amendment make lack of permission an element of vandalism. While this construction does render some of the language in the amended statute surplusage, an undesirable result
 
 (California Mfrs. Assn.
 
 v.
 
 Public Utilities Com., supra,
 
 24 Cal.3d at p. 844), it is
 
 *1014
 
 consistent with legislative intent as expressed in the language of the statute. (Code Civ. Proc., § 1859;
 
 Landrum
 
 v.
 
 Superior Court, supra,
 
 30 Cal.3d at p. 12;
 
 Moyer
 
 v.
 
 Workmen’s Comp. Appeals Bd., supra,
 
 10 Cal.3d at p. 230.)
 

 Thus, the trial court did not err in finding appellant had committed vandalism and in sustaining the petition; lack of permission was not an element of the offense. The amendment of section 594(a) did not make it an element, so retroactive application of the amended statute would not benefit appellant. Therefore, we need not consider the issues of retroactivity and retrial.
 

 The order is affirmed.
 

 Ortega, J., and Vogel (Miriam A.), J., concurred.