186 Cal.App.4th 537 (2010)
111 Cal. Rptr. 3d 843
CITY OF ALHAMBRA et al., Plaintiffs and Appellants,
v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.
No. B218347.
Court of Appeals of California, Second District, Division Three.
July 7, 2010.
*540 Colantuono & Levin, Michael G. Colantuono and Holly O. Whatley for Plaintiffs and Appellants.
Jarvis, Fay, Doporto & Gibson, Benjamin P. Fay and Rick W. Jarvis for League of California Cities as Amicus Curiae on behalf of Plaintiffs and Appellants.
Greenberg Traurig, Scott D. Bertzyk; Raymond G. Fortner, Jr., County Counsel, and Thomas M. Tyrrell, Deputy County Counsel, for Defendants and Respondents.
Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Defendants and Respondents.

*541 OPINION
ALDRICH, J. 

INTRODUCTION
This appeal involves a question of first impression. We are asked to determine the proper calculation under Revenue and Taxation Code section 97.75 of the fee a county may charge local governmental entities within its jurisdiction for the services counties perform under two specifically designated tax statutes, the so-called "Triple Flip" (id., § 97.68) and the "VLF Swap" (id., § 97.70). Appellants (plaintiffs below), 47[1] of the 88 general law or charter cities in the County of Los Angeles, petitioned the trial court for a writ of administrative mandamus contending that defendants, the County of Los Angeles and Wendy Watanabe in her official capacity as the county's auditor-controller (together the County), failed to follow the law and violated a clear and plain duty in calculating the section 97.75 service fee. A referee found that the County was faithfully following the law. Petitioners appeal from the judgment adopting the referee's ruling. We conclude the statute is clear on its face and hold that the County's method of calculating its fee under section 97.75 was unlawful. Accordingly, we reverse the judgment and remand for further proceedings.

FACTUAL BACKGROUND
The parties stipulated to the following pertinent facts:

1. One effect of Proposition 13 on counties

Counties are responsible for, among other things, assessing and collecting ad valorem property tax revenues from assessed property within their borders. As part of their administration of the property tax system, the counties calculate and distribute to the various local governmental entities (including *542 cities, redevelopment agencies, special districts, and counties themselves; hereinafter cities) within their jurisdiction each city's share of the property tax revenue.
Before passage of Proposition 13 (Cal. Const., art. XIIIA, § 1) in 1978, counties set their property tax rates at a level that enabled them to recoup the cost to them of property tax administration. With limited exceptions not relevant here, Proposition 13 capped property tax rates to 1 percent of assessed value. After Proposition 13, counties continued to bear the burden of assessing, collecting, and allocating property tax revenues, but lacked a means of recovering their costs for this administration.
In 1990, the Legislature passed the first of several measures that addressed reimbursement to the counties of cities' proportionate share of the cost of property tax administration.
In fiscal year 1992-1993, the Legislature created an Educational Revenue Augmentation Fund (ERAF) in each county. The ERAF is a fund into which property tax revenue is shifted to pay for the State of California's (State) constitutional responsibility to fund public education. The property taxes paid to both local schools and the ERAF are exempt from having to pay this property tax administration fee, or PTAF.
In 1994, the Legislature enacted Revenue and Taxation Code section 95.3 that, with the exception of schools and funds schools receive from ERAF's, permits counties to fairly apportion the burden of collecting property tax revenues by recovering from each city within its borders a PTAF that correlates to the property tax revenues allocated to that city. (Id., §§ 95.3, subd. (b)(1), 97.1.)[2] Section 95.3 provides the method for calculating an "administrative cost apportionment factor."
Generally speaking, the PTAF for a given city is computed as follows:
a. The County calculates the prior year property tax administration costs of the assessor, tax collector, assessment appeals board, and the auditor-controller. Such costs include the direct costs, all activities directly involved in assessing, collecting, and processing property taxes, and overhead costs established in accordance with federal Office of Management and Budget Circular A-87.
*543 b. The County calculates each city's proportionate share of such costs by calculating an apportionment factor from the ratio of the property tax revenue received by each city to the total property tax revenue distributed.
c. The County multiplies the administrative costs it incurred in the immediately preceding fiscal year by each city's cost apportionment factor to determine each city's PTAF. The city's annual PTAF is withheld by the County from the property tax distributions made by the County to cities for each fiscal year. (See Arbuckle-College City Fire Protection Dist. v. County of Colusa (2003) 105 Cal.App.4th 1155, 1158, 1159, 1163 [130 Cal.Rptr.2d 182] (Arbuckle-College).)

2. The revenue statutes at issue here

The three relevant revenue provisions were created nearly simultaneously. On December 12, 2003, the Legislature enacted Revenue and Taxation Code section 97.68 to be operative on March 3, 2004. (Stats. 2003, 5th Ex. Sess. 2003-2004, ch. 2, § 4.1.) Seven months later in August 2004, the Governor signed Senate Bill No. 1096 (2003-2004 Reg. Sess.), which amended Revenue and Taxation Code section 97.68 and enacted sections 97.70 and 97.75 at issue here, all effective August 5, 2004. (Stats. 2004, ch. 211, §§ 20.5, 21, 26.) We describe these three provisions individually.

a. The Triple Flip

In 2004, California voters passed the Economic Recovery Bond Act, Proposition 57 (Gov. Code, § 99050), which authorized the issuance of bonds to preserve public education, among other things. (Ibid.) To fund repayment of the economic recovery bonds, the Legislature passed Revenue and Taxation Code section 97.68,[3] a temporary measure for a revenue swap known as the *544 Triple Flip. The Triple Flip works thusly: section 97.68 reduced the Bradley-Burns Uniform Local Sales and Use Tax Law rate paid to cities and counties by 0.25 percent. Under section 97.68, the State retains that 0.25 percent and uses it to repay State-issued economic recovery bonds (the first flip). To compensate the cities and counties for the lost revenue, section 97.68 provides that, in lieu of the 0.25 percent sales tax money, counties take an equivalent amount in property tax revenue that would otherwise have been allocated to each county's ERAF and deposit it in a Sales and Use Tax Compensation Fund set up in each county's treasury. (§ 97.68, subd. (a)(2).) The revenue deposited in the fund is then allocated and distributed by the counties to each city recipient in the county in lieu of the lost 0.25 percent sales tax revenue (the second flip). (§ 97.68, subd. (c)(1)-(6).) The State *545 replaces funds that local schools otherwise would have received from the ERAF out of the State's general fund (the third flip).

b. The VLF Swap

Effective July 2004, the State permanently reduced the amount of the vehicle license fee (VLF) payable to cities and counties from 2 percent to 0.65 percent of a vehicle's assessed value. Revenue and Taxation Code section 97.70[4] replaces the lost VLF revenue with property taxes in a substitution referred to as the VLF Swap. As with the Triple Flip, counties take an amount of property tax revenue, otherwise required to be allocated to each county's ERAF, that is equivalent to the lost VLF revenue (§ 97.70, subd. (a)(1)(A)), and deposit that money in a Vehicle License Fee Property Tax Compensation Fund established in each county's treasury. (Id., subd. (a)(2).) The counties distribute the money in this fund to each city recipient in place of lost VLF proceeds. (§ 97.70, subd. (b)(1)(A)-(B).) The VLF Swap has no sunset provision.

*546 c. Revenue and Taxation Code Section 97.75

Pursuant to the Revenue and Taxation Code sections 97.68 (Triple Flip) and 97.70 (VLF Swap), the County has a duty to annually allocate and distribute to the 88 cities within the County, the appropriate payments from property tax revenues under the Triple Flip and VLF Swap.
Revenue and Taxation Code section 97.75, at issue in this appeal, reads: "Notwithstanding any other provision of law, for the 2004-05 and 2005-06 fiscal years, a county shall not impose a fee, charge, or other levy on a city, nor reduce a city's allocation of ad valorem property tax revenue, in reimbursement for the services performed by the county under Sections 97.68 and 97.70. For the 2006-07 fiscal year and each fiscal year thereafter, a county may impose a fee, charge, or other levy on a city for these services, but the fee, charge, or other levy shall not exceed the actual cost of providing these services." (Italics added.)
California's State Association of County Auditors prepared Senate Bill No. 1096 (2003-2004 Reg. Sess.) Guidelines (Guidelines) in response to the Legislature's enactment of Revenue and Taxation Code sections 97.68 (Triple Flip), 97.70 (VLF Swap), and 97.75, among other provisions of the 2004-2005 Budget Act. The Guidelines do not have the force of law. Consistent with the Guidelines, the County did not charge appellants for any property tax administrative services relating to the funds paid to cities under the Triple Flip and VLF Swap in the 2004-2005 and 2005-2006 fiscal years. Beginning in fiscal year 2006-2007, the County included the property tax funds paid under the Triple Flip and VLF Swap as additional property tax share to each city and apportioned the total PTAF costs to each city based on this share.
The financial consequences of the County's method of calculating the PTAF for appellants are that the PTAF the County charged appellants was collectively, over $4.8 million in fiscal year 2006-2007 and $5.3 million in fiscal year 2007-2008, more than such fees would have been charged had the Triple Flip and the VLF Swap revenues not been included in appellants' property tax share used for apportioning PTAF. By comparison, beginning with the 2006-2007 fiscal year, the County's actual cost of the incremental tax allocation duties required by the Triple Flip and VLF Swap only was approximately $35,000 per year.

PROCEDURAL HISTORY
In 2008, appellants petitioned the trial court for a writ of administrative mandate (Code Civ. Proc., § 1085) challenging the County's method of *547 calculating the PTAF charged to appellants starting in fiscal year 2006-2007. Maintaining that the PTAF the County charged each appellant and retained by the County was in excess of that permitted by Revenue and Taxation Code section 97.75, appellants sought a writ ordering the County to comply with that statute and to credit the excess withheld. The County denied appellants' contention that its method of calculating PTAF under section 97.75 is unlawful. Appellants argued that section 97.75 authorizes the County to charge only the actual cost of administering the Triple Flip and VLF Swap; it does not empower the County to include the property tax revenue under the Triple Flip and VLF Swap as additional property tax share for each city for purposes of calculating the administration fee for operating the property tax system as a whole. The County contended that the Legislature's enactment of Revenue and Taxation Code sections 97.68 (Triple Flip) and 97.70 (VLF Swap) decreased the amount of PTAF exempt from reimbursement because that money otherwise would have been attributable to the ERAF, and thus increased each city's proportionate share of the total property taxes distributed, thereby increasing appellants' PTAF. The County also argued that its method of calculating PTAF accords with applicable Revenue and Taxation Code sections including, but not limited to, sections 95.2, 95.3, 96.1, and 97.75.
The parties agreed to try this case by reference (Code Civ. Proc., § 638) and submitted the comprehensive stipulation of facts from which the above factual description was taken.[5] The parties also agreed to defer the question of recalculating each appellants' PTAF until the trial court determined whether the method currently used by the County was lawful. The referee ruled that the County's interpretation was consistent with legislative intent, and thus the County's method of calculation did not violate Revenue and Taxation Code section 97.75. The trial court entered judgment accordingly and appellants timely appealed.

*548 DISCUSSION
(1) "A traditional writ of mandate under Code of Civil Procedure section 1085 is a method for compelling a public entity to perform a legal and usually ministerial duty. [Citation.] The trial court reviews an administrative action pursuant to Code of Civil Procedure section 1085 to determine whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, contrary to established public policy, unlawful, procedurally unfair, or whether the agency failed to follow the procedure and give the notices the law requires. [Citations.]" (Klajic v. Castaic Lake Water Agency (2001) 90 Cal.App.4th 987, 995 [109 Cal.Rptr.2d 454], fn. omitted.)
At issue here is the meaning of Revenue and Taxation Code section 97.75. The County contends that the Legislature's enactment of Revenue and Taxation Code sections 97.68 and 97.70, decreased the amount of PTAF that otherwise would have been attributable to the ERAFand thus exempt from PTAFand increased each city's proportionate share of the total property taxes distributed, thereby increasing each appellant's PTAF obligation. The County believes the Legislature intended it to recoup from cities the costs associated with property tax administrative efforts of assessing, collecting, and allocating the share of property taxes that are included in the Triple Flip and VLF Swap. Appellants counter that the PTAF charged in fiscal years 2006-2007 and 2007-2008 to each appellant was in excess of "the actual cost of providing" the services under the Triple Flip (§ 97.68) and the VLF Swap (§ 97.70). That is, the County charged appellants more than that permitted by section 97.75 because the County should not have included the in-lieu property tax proceeds under the Triple Flip and VLF Swap in its calculation and apportionment of the cities' general PTAF responsibilities. Rather, the County should have charged each city only its proportion of the specific cost of making the accounting entries necessary to shift money in treasury accounts under the Triple Flip and VLF Swap. Therefore, we are tasked with determining whether the County's method of calculating appellants' PTAF violates section 97.75. Where the facts are undisputed, the issue here involves solely the interpretation of a statute, which is a question of law that we review de novo. (Goodman v. Lozano (2010) 47 Cal.4th 1327, 1332 [104 Cal.Rptr.3d 219, 223 P.3d 77]; International Engine Parts, Inc. v. Feddersen & Co. (1995) 9 Cal.4th 606, 611 [38 Cal.Rptr.2d 150, 888 P.2d 1279].)

The County's method of calculating the fee for its services is not authorized by Revenue and Taxation Code section 97.75 and is hence not lawful.
(2) Our task is to "`ascertain the intent of the drafters so as to effectuate the purpose of the law. [Citation.] Because the statutory language is generally *549 the most reliable indicator of legislative intent, we first examine the words themselves, giving them their usual and ordinary meaning and construing them in context.' [Citation.]" (Mejia v. Reed (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166].) We accord "significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided." (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) If the language of a statute is unambiguous, the plain meaning governs and it is unnecessary to resort to extrinsic sources to determine the legislative intent. (Kavanaugh v. West Sonoma County Union High School Dist. (2003) 29 Cal.4th 911, 919 [129 Cal.Rptr.2d 811, 62 P.3d 54].) If the statutory language does not yield a plain meaning, we may consider extrinsic evidence of intent, including the legislative history. (Mejia v. Reed, supra, at p. 663.) "[W]e presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.]" (Hunt v. Superior Court (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].)
As noted, Revenue and Taxation Code section 97.75 reads: "Notwithstanding any other provision of law, for the 2004-05 and 2005-06 fiscal years, a county shall not impose a fee, charge, or other levy on a city, nor reduce a city's allocation of ad valorem property tax revenue, in reimbursement for the services performed by the county under Sections 97.68 and 97.70. For the 2006-07 fiscal year and each fiscal year thereafter, a county may impose a fee, charge, or other levy on a city for these services, but the fee, charge, or other levy shall not exceed the actual cost of providing these services." (Italics added.)
(3) We agree with the referee that Revenue and Taxation Code section 97.75 "is clear" in that (1) notwithstanding any other provision of law, in fiscal years 2004-2005 and 2005-2006, the counties were forbidden to charge or recoup from the cities any administrative costs whatsoever "for the services performed by the county under sections 97.68 [(Triple Flip)] and 97.70 [(VLF Swap)]"; and (2) the words "these services" in sentence two have the same meaning as the phrase "`for the services performed by the county under Sections 97.68 and 97.70" in the first sentence.
Beyond that conclusion, the referee found that Revenue and Taxation Code section 97.75 was ambiguous and, there being no pertinent legislative history, the referee read section 97.75 as part of the statutory scheme which encompasses, among other statutes, Revenue and Taxation Code sections 95.2, 95.3, and 96.1, involving the computation of fees counties charge for property tax *550 administration. However, we agree with appellants that section 97.75 is not ambiguous and hence, does not require resort to extrinsic aids for its meaning.[6]
(4) Looking at the words of Revenue and Taxation Code section 97.75 alone, they reveal the clear intent that "services" are those that counties render pursuant to the Triple Flip (id., § 97.68) and VLF Swap (id., § 97.70) only. This is plain because section 97.75 tells us the fee is "for the services performed by the county under Sections 97.68 and 97.70." The County has stipulated that "[p]ursuant to Sections 97.68 and 97.70, [the County has] a duty to annually allocate and distribute to cities within Los Angeles County the appropriate payments from property tax revenues under the provisions of the Triple Flip and the VLF Swap." The tasks the Triple Flip and VLF Swap direct the County to undertake are to transfer, allocate, and distribute amounts, the size of which are specified by the Director of Finance. (Id., §§ 97.68, subd. (c)(1), (2), (4), 97.70, subd. (b)(1)-(2).) The services counties render under sections 97.68 (Triple Flip) and 97.70 (VLF Swap) do not include the additional activities of equalizing, assessing and collecting property tax, processing appeals, or otherwise administering the property tax system as a whole. Rather, the Triple Flip and VLF Swap are mechanisms designed to replace lost sales and use tax and VLF revenue with funds derived from property taxes that have already been levied. Our task "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted ...." (Code Civ. Proc., § 1858.) "`It is ... against all settled rules of statutory construction that courts should write into a statute by implication express requirements which the Legislature itself has not seen fit to place in the statute.' [Citations.]" (In re Rudy L. (1994) 29 Cal.App.4th 1007, 1011 [34 Cal.Rptr.2d 864]; see Code Civ. Proc., § 1858.) Therefore, the absence from the Triple Flip or VLF Swap statutes of the words equalize, assess, or collect, demonstrates the Legislature's intent that the administrative activities counties perform under the Triple Flip and VLF Swap are not part of the *551 "traditional PTAF-generating" tasks of property tax administration, but are limited to the services the counties perform to process the Triple Flip and VLF Swap only.
(5) Furthermore, not only does Revenue and Taxation Code section 97.75 limit the scope of services counties provide to those necessary to process the Triple Flip and the VLF Swap, but the second sentence of section 97.75 specifies that counties may only recover the "actual cost of providing these services." The Legislature's use of this phrase reveals its intent to restrict cities' payment to no more than the definite costs related to performing the services under the two revenue provisions, Revenue and Taxation Code sections 97.68 and 97.70, the only two revenue sections mentioned in section 97.75. All three statutes, the Triple Flip, the VLF Swap, and section 97.75, were fashioned by Senate Bill No. 1096 (2003-2004 Reg. Sess.).[7] The Legislature knew of the existence of Revenue and Taxation Code section 95.3 and other existing statutes governing PTAF, and yet it passed Senate Bill No. 1096 creating section 97.75 as a statute separate from property tax administrative-fee-generating statutes, whose sole reference is to the Triple Flip and VLF Swap. "Generally, it can be presumed that when the Legislature has enacted a specific statute to deal with a particular matter, it would intend the specific statute to control over more general provisions of law that might otherwise apply. [Citation.]" (Arbuckle-College, supra, 105 Cal.App.4th at p. 1166.) (6) The Legislature's choice to enact section 97.75 where statutes addressing the calculation of PTAF have existed for decades indicates the legislative intent that "actual cost" refers to the cost to counties of performing the newly created Triple Flip and VLF Swap only, and should not be included in the cost to counties to perform the general property tax administration. Otherwise the phrase "actual cost" would be superfluous. Stated differently, section 97.75 is a stand-alone provision authorizing payment for the actual cost to the County of administering the Triple Flip and VLF Swap only. Adding the property tax revenue related to the Triple Flip and VLF Swap to the general property tax shares from which the County calculates the PTAF for property tax administration, as the County advocates, would violate section 97.75's language limiting reimbursement to "actual cost of providing these services," i.e., the Triple Flip and VLF Swap.
(7) The County contends, where Revenue and Taxation Code section 97.75 is ambiguous, that we must read it in the context of the statutory scheme for property tax administrative fees as a whole, including Revenue and Taxation Code sections 95.2, 95.3, and 96.1. The argument is unavailing for *552 two reasons. First, we have concluded that section 97.75 is not ambiguous. "`"It is a settled principle in California law that `When statutory language is ... clear and unambiguous there is no need for construction, and courts should not indulge in it.'" [Citation.]' [Citation.]" (California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd. (2004) 117 Cal.App.4th 350, 355 [12 Cal.Rptr.3d 12], italics added.)
(8) Second and more important, however, is the fact that Revenue and Taxation Code section 97.75 commences with "[n]otwithstanding any other provisions of law ...." (Italics added.) "This `term of art' expresses a legislative intent `to have the specific statute control despite the existence of other law which might otherwise govern ....' [Citation.]" (People v. Franklin (1997) 57 Cal.App.4th 68, 74 [66 Cal.Rptr.2d 742], italics added) and thus clearly indicates the Legislature's intent that section 97.75 govern the fees for administering the Triple Flip and VLF Swap regardless of any earlier enacted statutes governing the assessment and collection of PTAF's in general, such as Revenue and Taxation Code section 95.3. (See Arbuckle-College, supra, 105 Cal.App.4th at p. 1167.) Stated otherwise, the Legislature intended that section 97.75 stand alone with respect to the administrative costs incurred in performing the services required for the Triple Flip and VLF Swap, while assuring that counties would still be reimbursed for those efforts.[8] Even if the phrase "[n]otwithstanding any other provision of law ...." were to apply only to section 97.75's first sentence prohibiting the counties from recovering a service fee for the first two years (fiscal years 2004-2005, and 2005-2006), our conclusion would be the same. The second sentence of section 97.75 reinstates the service fee, but specifies that such fee "shall not exceed the actual cost of providing these services" (italics added) under the Triple Flip and VLF Swap.
(9) Indeed, had the Legislature meant for the "services" performed pursuant to the Triple Flip and VLF Swap to encompass those governed by *553 the property tax administrative fee statutes including Revenue and Taxation Code sections 95.2, 95.3, and 96.1, it could have said so in section 97.75. "The Legislature `is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof. [Citation.]'" (People v. McGuire (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12].) Cognizant of the extensive statutory scheme governing traditional property tax administrative fees, coupled with the repeated legislative aim of compensating counties for their efforts in administering the State's property tax system (see § 95.3, subd. (e)),[9] the Legislature could have, but notably did not refer to those traditional PTAF-generating statutes in the body of section 97.75. Alternatively, had the Legislature intended the in-lieu property tax revenues in the Triple Flip and VLF Swap to be treated in the same manner as property tax money in general, it could have remained silent because sections 95.3 and 96.1 already addressed the calculation of traditional PTAF.
We are unpersuaded by the County's argument that under the PTAF allocation rule in effect for the "better part of the last two decades," the County should be able to recoup the PTAF associated with the additional property tax revenues being allocated to cities under the Triple Flip and VLF Swap. Neither the Triple Flip nor the VLF Swap existed two decades ago. The Legislature added Revenue and Taxation Code section 97.75 a mere six years ago in conjunction with its creation of the Triple Flip and VLF Swap, and section 97.75's reference to Revenue and Taxation Code sections 97.68 (Triple Flip) and 97.70 (VLF Swap) only clearly indicates that "services" under section 97.75 refers solely to activities performed under the Triple Flip and VLF Swap. Thus, the in-lieu property tax payment amounts under these two revenue swapping measures should not be included in the traditional computation for PTAF. Our reading of section 97.75 is in harmony with the traditional PTAF-generating statutes as it addresses the actual cost of the services the County performs under the newer Triple Flip and VLF Swap. (Chatsky & Associates v. Superior Court (2004) 117 Cal.App.4th 873, 876 [12 Cal.Rptr.3d 154]; Code Civ. Proc., § 1858.)
(10) The parties argue at length about the effect of the differences between each sentence in Revenue and Taxation Code section 97.75. The first sentence lists "a fee, charge, or other levy ... reduc[tion of] a city's *554 allocation of ad valorem property tax revenue," whereas the second sentence of section 97.75 lists only the "fee, charge, or other levy on a city" and then instructs that the "fee, charge, or other levy shall not exceed the actual cost of providing these services." (§ 97.75, italics added.) These two sentences are easily reconciled under the rule expressio unius est exclusio alterius, that is, "`"`the expression of certain things in a statute necessarily involves exclusion of other things not expressed ...'"' [citation] [or] `"[w]here exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed."' [Citation.]" (Bonner v. County of San Diego (2006) 139 Cal.App.4th 1336, 1347-1348 [44 Cal.Rptr.3d 116].) Reducing cities' property tax allocations in recompense for services rendered under the Triple Flip and VLF Swap is prohibited in the first two fiscal years after enactment of section 97.75, and thereafter such a reduction is simply not within the County's grant of authority.
Next, the County argues that "[t]he broad remedial intent behind [Revenue and Taxation Code] section 95.3 is clear," that "[w]ith the exception of schools and ERAFs, every other entity receiving property tax revenues is to pay its proportionate share of PTAF associated with the property tax revenues it receives." Where the in-lieu payments under the Triple Flip and VLF Swap derive from property taxes, and where Revenue and Taxation Code sections 97.68, 97.70, and 97.75 are all Revenue and Taxation Code, division 1, part 0.5, chapter 6, article 3 adjustments under section 96.1, the County argues, the in-lieu payments from property tax revenues under the VLF Swap and Triple Flip must be included in the calculation of the general PTAF it charges appellants.
However, Revenue and Taxation Code sections 95.3 and 96.1 are the very same earlier statutes over which, as noted, the newer and specific Revenue and Taxation Code section 97.75 controls. (People v. Franklin, supra, 57 Cal.App.4th at p. 74.) Also, counties are not entitled to recover PTAF from schools and ERAF's. More important, however, by virtue of section 97.75, counties do recover the "actual cost" of administering the Triple Flip and VLF Swap. Furthermore, while in-lieu payments are made from property tax funds, they are designed to replenish lost revenues that were not originally property taxes but were collected from sales and use tax and the VLF's. And the in-lieu payments are made from property taxes that would otherwise have been allocated to the County's ERAF (id., § 97.68, subd. (a)), that are exempt from paying PTAF. The Triple Flip and VLF Swap are specific accounting manipulations that involve many sorts of revenue. It is fair to conclude that the Legislature's use in section 97.75 of the phrase "actual cost" indicates its recognition, while the in-lieu payments derive from property tax funds, that the entire accounting scheme that comprises the Triple Flip and VLF Swap involves other revenue sources as well, such as the sales and use tax and VLF.
*555 We are also unpersuaded by the County's observation that appellants have benefitted from the VLF Swap, in that rather than being revenue neutral, appellants have experienced a revenue increase as the result of Revenue and Taxation Code section 97.70. Yet, such an observation does not justify a calculation of PTAF that is not statutorily authorized.[10] It is not our task to rewrite Revenue and Taxation Code section 97.75 to offset perceived inequity created by another statute, in this case section 97.70. Temporary fluctuations in the value of the taxes reveal little about the meaning of section 97.75.
(11) "As a general rule, the courts defer to the agency charged with enforcing a regulation when interpreting a regulation because the agency possesses expertise in the subject area. [Citation.] However, final responsibility for interpreting a statute or regulation rests with the courts and a court will not accept an agency interpretation which is clearly erroneous or unreasonable. [Citations.]" (Aguilar v. Association for Retarded Citizens (1991) 234 Cal.App.3d 21, 28 [285 Cal.Rptr. 515].) (12) We cannot accept the County's calculation method here because it violates the clear instructions of Revenue and Taxation Code section 97.75. In the end, it is up to the Legislature not the courts to rewrite the statute.

DISPOSITION
The judgment is reversed and the matter is remanded to the trial court to determine the issue of timeliness and, if necessary, to calculate the service fee under Revenue and Taxation Code section 97.75 in accordance with the views expressed in this opinion. Appellants are to recover their costs on appeal.
Klein, P. J., and Kitching, J., concurred.
NOTES
[1] The plaintiff cities are City of Alhambra, City of Arcadia, City of Artesia, City of Baldwin Park, City of Bell Gardens, City of Bellflower, City of Bradbury, City of Burbank, City of Calabasas, City of Carson, City of Cerritos, City of Commerce, City of Covina, City of Culver City, City of Diamond Bar, City of Gardena, City of Glendale, City of Glendora, City of Hawaiian Gardens, City of Hawthorne, City of Huntington Park, City of Industry, City of Irwindale, City of La Habra Heights, City of La Mirada, City of Lakewood, City of Lawndale, City of Lomita, City of Long Beach, City of Lynwood, City of Montebello, City of Monterey Park, City of Norwalk, City of Paramount, City of Pico Rivera, City of Pomona, City of Redondo Beach, City of Rosemead, City of San Dimas, City of Santa Clarita, City of Santa Fe Springs, City of Sierra Madre, City of Signal Hill, City of South El Monte, City of South Gate, City of West Covina, and City of Whittier. Not included as a plaintiff is the City of Los Angeles, the largest property tax recipient of the cities in the County.
[2] Revenue and Taxation Code section 95.3, subdivision (b)(1) reads: "Each proportionate share of property tax administrative costs determined pursuant to subdivision (a), except for those proportionate shares determined with respect to a school entity or ERAF, shall be deducted from the property tax revenue allocation of the relevant jurisdiction or community redevelopment agency, and shall be added to the property tax revenue allocation of the county. For purposes of applying this paragraph for the 1990-91 fiscal year, each proportionate share of property tax administrative costs shall be deducted from those amounts allocated to the relevant jurisdiction or community redevelopment agency after January 1, 1991." (See also id., § 97.1.)
[3] Revenue and Taxation Code section 97.68 provides in part, "Notwithstanding any other provision of law, in allocating ad valorem property tax revenue allocations for each fiscal year during the fiscal adjustment period, all of the following apply:

"(a)(1) The total amount of ad valorem property tax revenue otherwise required to be allocated to a county's Educational Revenue Augmentation Fund shall be reduced by the countywide adjustment amount.
"(2) The countywide adjustment amount shall be deposited in a Sales and Use Tax Compensation Fund that shall be established in the treasury of each county.
"(b) For purposes of this section, the following definitions apply:
"(1) `Fiscal adjustment period' means the period beginning with the 2004-05 fiscal year and continuing through the fiscal year in which the Director of Finance notifies the State Board of Equalization pursuant to subdivision (b) of Section 99006 of the Government Code.
"(2) Except as otherwise provided in subdivision (d), the `countywide adjustment amount' means the combined total revenue loss of the county and each city in the county that is annually estimated by the Director of Finance, based upon the actual amount of sales and use tax revenues transmitted under Section 7204 in that county in the prior fiscal year and any projected growth on that amount for the current fiscal year as determined by the State Board of Equalization and reported to the director on or before August 15 of each fiscal year during the fiscal adjustment period, to result for each of those fiscal years from the 0.25 percent reduction in local sales and use rate tax authority applied by Section 7203.1. The director shall adjust the estimates described in this paragraph if the board reports to him or her any changes in the projected growth in local sales and use tax revenues for the current fiscal year.
"(3) `In lieu local sales and use tax revenues' means those revenues that are transferred under this section to a county or a city from a Sales and Use Tax Compensation Fund or an Educational Revenue Augmentation Fund.
"(c) Except as otherwise provided in subdivision (d), for each fiscal year during the fiscal adjustment period, in lieu sales and use tax revenues in the Sales and Use Tax Compensation Fund shall be allocated among the county and the cities in the county, and those allocations shall be subsequently adjusted, as follows:
"(1) The Director of Finance shall, on or before September 1 of each fiscal year during the fiscal adjustment period, notify each county auditor of that portion of the countywide adjustment amount for that fiscal year that is attributable to the county and to each city within that county.
"(2) The county auditor shall allocate revenues in the Sales and Use Tax Compensation Fund among the county and cities in the county in the amounts described in paragraph (1). The auditor shall allocate one-half of the amount described in paragraph (1) in each January during the fiscal adjustment period and shall allocate the balance of that amount in each May during the fiscal adjustment period.
"(3) After the end of each fiscal year during the fiscal adjustment period, other than a fiscal year subject to subdivision (d), the Director of Finance shall, based on the actual amount of sales and use tax revenues that were not transmitted for the prior fiscal year, recalculate each amount estimated under paragraph (1) and notify the county auditor of the recalculated amount. [¶] ... [¶]
"(f) This section may not be construed to do any of the following:
"(1) Reduce any allocations of excess, additional, or remaining funds that would otherwise have been allocated to cities, counties, cities and counties, or special districts pursuant to clause (i) of subparagraph (B) of paragraph (4) of subdivision (d) of Section 97.2, clause (i) of subparagraph (B) of paragraph (4) of subdivision (d) of Section 97.3, or Article 4 (commencing with Section 98), had this section not been enacted. The allocation made pursuant to subdivisions (a) and (c) shall be adjusted to comply with this paragraph.
"(2) Require an increased ad valorem property tax revenue allocation to a community redevelopment agency.
"(3) Alter the manner in which ad valorem property tax revenue growth from fiscal year to fiscal year is determined or allocated in a county."
[4] Revenue and Taxation Code section 97.70 reads in part, "Notwithstanding any other provision of law, for the 2004-05 fiscal year and for each fiscal year thereafter, all of the following apply:

"(a)(1)(A) The auditor shall reduce the total amount of ad valorem property tax revenue that is otherwise required to be allocated to a county's Educational Revenue Augmentation Fund by the countywide vehicle license fee adjustment amount.
"(B) If, for the fiscal year, after complying with Section 97.68 there is not enough ad valorem property tax revenue that is otherwise required to be allocated to a county Educational Revenue Augmentation Fund for the auditor to complete the allocation reduction required by subparagraph (A), the auditor shall additionally reduce the total amount of ad valorem property tax revenue that is otherwise required to be allocated to all school districts and community college districts in the county for that fiscal year by an amount equal to the difference between the countywide vehicle license fee adjustment amount and the amount of ad valorem property tax revenue that is otherwise required to be allocated to the county Educational Revenue Augmentation Fund for that fiscal year. This reduction for each school district and community college district in the county shall be the percentage share of the total reduction that is equal to the proportion that the total amount of ad valorem property tax revenue that is otherwise required to be allocated to the school district or community college district bears to the total amount of ad valorem property tax revenue that is otherwise required to be allocated to all school districts and community college districts in a county....
"(2) The countywide vehicle license fee adjustment amount shall be allocated to the Vehicle License Fee Property Tax Compensation Fund that shall be established in the treasury of each county.
"(b)(1) The auditor shall allocate moneys in the Vehicle License Fee Property Tax Compensation Fund according to the following:
"(A) Each city in the county shall receive its vehicle license fee adjustment amount.
"(B) Each county and city and county shall receive its vehicle license fee adjustment amount.
"(2) The auditor shall allocate one-half of the amount specified in paragraph (1) on or before January 31 of each fiscal year, and the other one-half on or before May 31 of each fiscal year."
[5] Without conceding that they were required to do so, each petitioner has filed a claim with the County for damages in the amount of the PTAF they contend was wrongfully withheld by the County. To date, the County has not paid or otherwise credited any petitioner for any PTAF withheld. The County further contends that, with respect to the PTAF attributable to the 2006-2007 fiscal year, each such claim was untimely. Petitioners do not concede this point. The parties by their stipulation agreed that petitioners' preexisting claims need not be supplemented to assert alleged damages arising on the same basis as stated in those claims, but occurring after fiscal year 2007-2008, and those earlier claims shall be deemed to include those alleged ongoing damages, thus relieving petitioners of any legal obligation to file such supplemental claims and relieving the County of any legal obligation to act upon such supplemental claims. The parties agreed to defer trying the timeliness issue until the court determined whether the method the County currently uses is lawful. If the court concluded the method was lawful, no further argument on timeliness would be necessary.
[6] Although we do not consider it, the only relevant reference found in the legislative history is the following from the Legislative Counsel's Digest: "(7) Existing law authorizes a county to retain a portion of the ad valorem property tax revenue that would otherwise be allocated to specified entities in a county to reimburse the county for costs in collecting and administering the ad valorem property tax.

"This bill would, for the 2004-05 and 2005-06 fiscal years only, prohibit a county from imposing a fee, charge, or other levy on a city, or from retaining any portion of the ad valorem property tax revenue allocation of a city to reimburse the county for costs the county may incur under the bill and a specified statute." (Legis. Counsel's Dig., Sen. Bill No. 1096 (2003-2004 Reg. Sess.) pp. 4-5.) There appears to be no dispute that this language provides no guidance about what the Legislature meant by the word "services" in Revenue and Taxation Code section 97.75.
[7] Revenue and Taxation Code section 97.68 was enacted effective December 12, 2003, and became operative March 3, 2004 (Stats. 2003, 5th Ex. Sess. 2003-2004, ch. 2, § 4.1), but was immediately amended, effective August 5, 2004, by enactment of Senate Bill No. 1096 (2003-2004 Reg. Sess.) (Stats. 2004, ch. 211, § 20.5).
[8] Although the referee relied on Arbuckle-College, supra, 105 Cal.App.4th 1155, for the contrary result, the referee overlooked the facts that Revenue and Taxation Code section 95.3 predates enactment of section 97.75, and has not been amended since enactment of section 97.75. Hence, we should not refer to the older statutes where the newer one, section 97.75 can be read by itself. Although Arbuckle-College involves section 95.3, it is otherwise inapposite. In that case, a fire protection district claimed that the county's recovery of PTAF was controlled by Government Code section 29142, which permitted a county to recover administrative costs under an agreement between the county and the fire protection district, and so the district was exempt from the PTAF provisions of Revenue and Taxation Code section 95.3. Disagreeing, Arbuckle-College held that the county had the right to recover PTAF pursuant to the later enacted section 95.3, which specifies that its provisions apply notwithstanding any other provision of law. (105 Cal.App.4th at pp. 1163, 1167.) Arbuckle-College also held that section 95.3 was a remedial statute, which should be liberally construed. (105 Cal.App.4th at p. 1167.) At issue here is section 97.75, which was enacted a decade after section 95.3, and which also specifically applies, "[n]otwithstanding any other provision of law."
[9] Revenue and Taxation Code section 95.3, subdivision (e) reads: "It is the intent of the Legislature in enacting this section to recognize that since the adoption of Article XIII A of the California Constitution by the voters, county governments have borne an unfair and disproportionate part of the financial burden of assessing, collecting, and allocating property tax revenues for other jurisdictions and for redevelopment agencies. The Legislature finds and declares that this section is intended to fairly apportion the burden of collecting property tax revenues and is not a reallocation of property tax revenue shares or a transfer of any financial or program responsibility."
[10] Likewise, the County's reliance on the Guidelines to justify its calculation method is unavailing. The Guidelines were not vetted under the Administrative Procedure Act (Gov. Code, § 11340 et seq.) and, as the parties stipulated, they "do not have the force of law."